IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABIOLA AJALA, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EDY ABOUJAOUDE, *et al.*, | : | NO. 25-7111 |

**MEMORANDUM**

**Padova, J.**                                                                                                    **July 22, 2026**

*Pro se* Plaintiff Abiola Ajala commenced this civil action by filing a Complaint (Docket No. 2) that named as Defendants Edy Aboujaoude, Soleiman Khalil Raie, and the Raie Law Firm. The Complaint asserts claims against all Defendants arising from the placement of recording devices inside and outside of Plaintiff's home, including inside her bedroom. Currently before the Court are the Motion to Dismiss the Complaint filed by Defendant Edy Aboujaoude (Docket No. 12) and the Motion to Dismiss filed by Defendant Raie and Defendant the Raie Law Firm (collectively "the Raie Defendants") (Docket No. 11), to which Ajala has filed a Response (Docket No. 15). For the following reasons, we grant the Motion to Dismiss filed by the Raie Defendants in part and deny both Motions in all other respects.

I.     FACTUAL ALLEGATIONS

The Complaint alleges that "on multiple occasions during [their] separation, [Aboujaoude] unlawfully entered Plaintiff's bedroom without her knowledge or consent and installed recording devices and captured audio and visual recordings in her bedroom during her private and personal moments," and "subsequently disclosed information obtained from these recordings to third parties." (Compl. ¶ 9.) Aboujaoude "also recorded Plaintiff's private conversations with her therapist." (*Id.* ¶ 10.) Aboujaoude additionally "recorded conversations Plaintiff had outside her home with a friend." (*Id.* ¶ 11.) Aboujaoude "admitted to police officers that he recorded Plaintiff

and that his Attorney, [Defendant] Soleiman Raie instructed him to install devices throughout the house." (*Id.* ¶ 13.)

The Complaint asserts clams against all Defendants for violation of the Federal Wiretap Act, also known as the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511, 2520 (Count I); the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa Cons. Stat. Ann. §§ 5703, 5725 (Count II); and for intrusion upon seclusion under Pennsylvania common law (Count III). Plaintiff seeks compensatory, actual, and punitive damages, as well as attorney's fees and costs of litigation. Defendants have moved to dismiss all of Plaintiff's claims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    LEGAL STANDARD

When we apply Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). "A complaint is properly dismissed for failing to state a claim 'if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility.'" *Talley v. Pillai*, 116 F.4th 200, 206 (3d Cir. 2024) (alteration in original) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "[W]e need not 'accept as true a legal conclusion couched as a factual allegation.'" *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 248 (3d Cir. 2022) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (citation omitted).

2

"A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  A complaint fails to allege a facially plausible claim if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." *Geness v. Admin. Off. of Pa. Cts.*, 974 F.3d 263, 269 (3d Cir. 2020) (quoting *Twombly*, 550 U.S. at 555).  Since Plaintiff is proceeding pro se in this action, we construe the Complaint "liberally and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Kalu*, 113 F.4th at 325 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (citation omitted).

## III.    DISCUSSION

### A.    Count I - ECPA

The Complaint alleges a claim for violation of the ECPA against all Defendants.  A violation of the ECPA occurs when a person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).  The ECPA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical or other device." *Id.* § 2510(4).  It defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." *Id.* § 2510(2).  The ECPA also provides that "any person whose wire, oral, or electronic communication is intercepted,

3

disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate," including actual or statutory damages, attorney's fees, costs of litigation, and punitive damages. *Id.* § 2520(a)-(c).

Aboujaoude argues that we should dismiss Plaintiff's ECPA claim as against him because the Complaint does not allege that he intercepted any of Plaintiff's communications. Aboujaoude asserts that the Complaint merely alleges that he installed exterior cameras at his own residence for safety purposes. He further asserts that he "had lawful authority to install exterior security devices on his own home." (Aboujaoude Mem. at 5 of 11.) He also "denies all allegations of installing cameras in his wife's bedroom" and asserts that "any alleged recordings were to prove his innocence from false allegations of abuse by Plaintiff in court and made in his own home." (*Id.* at 4 of 11.)

However, the Complaint alleges that Aboujaoude "entered Plaintiff's bedroom without her knowledge or consent and installed recording devices and captured audio and visual recordings in her bedroom during her private and personal moments," that he "recorded Plaintiff's private conversations with her therapist," and that he "subsequently disclosed information obtained from these recordings to third parties." (Compl. ¶¶ 9-11.) We conclude that these allegations, that Aboujaoude installed recording devices in Plaintif's bedroom, recorded her conversations, and acquired those recordings, are sufficient to state a claim to relief under the ECPA. Although Aboujaoude disputes the veracity of these allegations, we assume the truth of the factual allegations of the Complaint at this stage of the litigation. *See Talley*, 116 F.4th at 206. Moreover, while Aboujaoude asserts that he installed cameras only outside of the residence and only for the purposes of safety and to defend himself from unjust allegations of abuse (*see* Aboujaoude Mem.

4

at 3, 5 of 11), neither the ECPA nor the WESCA contain an exception for recordings made in self-defense or for safety. *See* 18 U.S.C. § 2511(2); 18 Pa. Cons. Stat. Ann. § 5704). Indeed, courts have recognized that the ECPA contains no exception for interspousal wiretapping. *See, e.g.*, *Glazner v. Glazner*, 347 F.3d 1212, 1215 (11th Cir. 2003) (noting that "an overwhelming majority of the federal circuit and district courts, as well as state courts, addressing the issue have refused to imply an exception to Title III liability for interspousal wiretapping" (listing cases)). Accordingly, we deny Aboujaoude's Motion to Dismiss the ECPA claim in Count I of the Complaint.

The Raie Defendants argue that Count I should be dismissed as against them because the Complaint does not allege that they themselves intercepted any communications and because the Complaint only alleges that Aboujaoude told police that they advised him "to install devices throughout the house." (Compl. ¶ 13.) The civil liability provision of the ECPA does not extend to those who "procure" another person to intercept a communication. *See, e.g.*, *Shefts v. Petrakis*, 954 F. Supp. 2d 769, 777 (C.D. Ill. 2013) ("It is now clear that 'procurement' cannot support civil ECPA liability, and it is likewise clear that there can be no civil 'conspiracy' (or 'aiding and abetting' or 'agency') liability under the ECPA, as such forms of liability would permit plaintiffs to circumvent Congress'[s] intent to limit civil liability to those who have actually engaged in the prohibited practices . . . ."). The Complaint does not allege that the Raie Defendants were involved in intercepting her communications. As we stated above, it alleges only that the Raie Defendants told Aboujaoude to install the devices. We conclude that this allegation is insufficient to support liability under the ECPA, and we grant the Raie Defendant's Motion to Dismiss as to the ECPA claim asserted against them in Count I.

B.    Count II - WESCA

In order to plausibly allege a claim for a violation of WESCA, a Complaint must allege the following: "(1) that [the Plaintiff] engaged in a communication; (2) that [the Plaintiff] possessed an expectation that the communication would not be intercepted; (3) that [her] expectation was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so." *Adair v. Cigna Corp. Servs., LLC*, 818 F. Supp. 3d 641, 668 n.16 (E.D. Pa. 2026) (quoting *Agnew v. Dupler*, 717 A.2d 519, 522 (Pa. 1998)).  We find that the allegations of the Complaint satisfy this requirements for the reasons we discussed above in connection with Plaintiff's ECPA claim and we deny Aboujaoude's Motion to Dismiss with respect to the WESCA claims asserted against him in Count II.

We also note that there is a relevant difference between the federal and state wiretapping statutes authorizing civil actions that is relevant to Plaintiff's WESCA claim against the Raie Defendants.  As we discussed above, there is no civil liability for procurement of another person to intercept a communication under the ECPA.  *See, Shefts*, 954 F. Supp. 2d at 777.  However, unlike the ECPA, WESCA provides for civil liability for any person who intercepts, discloses *or uses or procures any other person* to intercept, disclose or use, such [wire, electronic or oral] communication."  18 Pa. Cons. Stat. Ann. § 5725(a) (emphasis added); *see also Thomas v. Thomas*, Civ. A. No. 11-2336, 2012 WL 4895117, at *2-4 (M.D. Pa. Oct. 15, 2012) (noting the variations in the language of the two statutes), *aff'd*, 529 F. App'x 181 (3d Cir. 2013); *Adair*, 818 F. Supp. 3d at 670 (stating that one of the elements of a claim under WESCA is that the defendant attempted to, or successfully intercepted the communication, *or encouraged another to do so*" (quoting *Agnew*, 717 A.2d at 522) (emphasis added)).

6

The Raie Defendants assert that liability under WESCA requires intentional interception of communications. This is correct. <u>See</u> 18 Pa. Cons. Stat. Ann. § 5703 ("Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:  (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication . . . ."). However, the Raie Defendants further contend that liability under WESCA based on "procurement requires intentional participation in wrongful conduct," and "intentional acquisition of a communication." (Raie Defendants Mem. at 7). The Raie Defendants argue that we should dismiss Count II as against them because the Complaint fails to plausibly allege that they intentionally participated in the acquisition or that they acquired any of Plaintiff's communications. The Raie Defendants rely on three cases: *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003); *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 168 (3d Cir. 2005); and *Bartnicki v. Vopper*, 532 U.S. 514, 523 (2001). The portion of *Fraser* on which the Raie Defendants rely states that an "intercept" under the ECPA must occur contemporaneously with transmission." 352 F.3d at 113. This portion of *Fraser* does not address the requirements for liability for interception under WESCA. *See, e.g. id.* The section of *DIRECTV*, on which the Raie Defendants rely holds that the interception of encrypted satellite transmissions is not excepted from liability under the ECPA. 431 F.3d at 168. This section of *DIRECTV* does not address liability under WESCA. *Id.* Thus, neither *Fraser* nor *DIRECTV* support the Raie Defendants' argument

*Bartnicki* concerned ECPA and WESCA claims brought against a journalist who broadcast a recording of an intercepted mobile phone communication. 532 U.S. at 518-19. The Supreme Court considered the validity of these statutes as applied to the disclosure of the intercepted conversation. *Id.* at 525. Even though  the Supreme Court accepted the proposition that the

interception was intentional, it concluded that the application of the statutes in this case violated the First Amendment because the matter discussed was a matter of public concern. *Id.* at 535. Thus, *Bartnicki* did not discuss whether intentional interception and acquisition is required for liability under WESCA.

Thus, none of the cases on which the Raie Defendants rely support their argument that liability for procurement under WESCA requires both intentional participation in wrongful conduct (the interception) and intentional acquisition of the intercepted communications. Moreover, while liability under WESCA only attaches where there is an intent to intercept a plaintiff's communication, *see* 18 Pa. Cons. Stat. Ann. § 5703(1), the Complaint alleges that Aboujaoude intentionally intercepted Plaintiff's communications at the direction of the Raie Defendants (Compl. ¶ 13). While the Raie Defendants make factual arguments that they only "advised . . . Aboujaoude to install exterior cameras at [his] own residence for safety purposes" and did not acquire any intercepted communications (Raie Defs. Mem. at 7-8), we are required, at this stage of the litigation, to accept Plaintiff's factual allegations as true. *See Talley*, 116 F.4th at 206. Furthermore, these factual arguments fail to satisfy the Raie Defendants' burden, at this stage of the litigation, to show that the Complaint's allegations that they instructed Aboujaoude to install devices in the home and those devices intercepted Plaintiff's communications fail to state a violation of the plain language of WESCA that imposes liability on one who "procures" or "encourages" another person to intercept communications. *See* 18 Pa. Cons. Stat. Ann. § 5725(a); *Adair*, 818 F. Supp. 3d at 670; *Agnew*, 717 A.2d at 522; *see also Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 459 (E.D. Pa. 2023) ("The express language of the Pennsylvania Wiretap Act provides a cause of action against one who 'procures any other person to intercept' an

electronic communication.").  Accordingly, we deny the Raie Defendants' Motion to Dismiss as to Plaintiff's WESCA claim in Count II of the Complaint.

      C.      <u>Count III - Intrusion upon Seclusion</u>

Count III of the Complaint asserts a claim against all Defendants for intrusion upon seclusion under Pennsylvania common law.  (Compl. ¶¶ 22-27.)  "Intrusion upon seclusion is an intentional intrusion, 'physical[] or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person.'" *Cook v. GameStop, Inc.*, 148 F.4th 153, 160 (3d Cir. 2025) (quoting *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 260 (3d Cir. 2004)).  "The tort may occur by (1) physical intrusion into a place where the plaintiff has secluded himself or herself; (2) use of the defendant's senses to oversee or overhear the plaintiff's private affairs; or (3) some other form of investigation or examination into plaintiff's private concerns." *Id.* (quoting *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 621 (3d Cir. 1992)).  "[T]he harm caused by intrusion upon seclusion does not turn on the exposure of personal or sensitive information. That is because the tort 'consists solely of an intentional interference with [the plaintiff's] interest in solitude or seclusion, either as to [her] person or as to [her] private affairs or concerns.'" *Id.* (quoting Restatement (Second) of Torts § 652B cmt. a (Am. L. Inst. 1977)).  "'The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the . . .  information' acquired." *Id.* (quoting Restatement (Second) of Torts § 652B cmt. b).  "'The kind of harm vindicated by the intrusion-upon-seclusion tort is relatively broad.'" *In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, 175 F.4th 423, 432 (3d Cir. 2026) (quoting *Dickson v. Direct Energy, LP*, 69 F.4th 338, 345 (6th Cir. 2023)).

None of the Defendnats make a specific argument why we should dismiss Count III.  We find that the Complaint alleges that Aboujaoude entered Plaintiff's bedroom and private spaces at the direction of the Raie Defendants to place recording devices and used those devices to capture Plaintiff's private conversations.  (Compl. ¶¶ 9-10, 13.)  We thus conclude that the Complaint plausibly alleges a claim against all Defendants for intrusion upon seclusion in violation of Pennsylvania common law.  We therefore deny the Motions to Dismiss with respect to Count III of the Complaint.

D.    The Attorney-Client Relationship

The Raie Defendants argue that the Complaint should be dismissed as to them because they allege only that they provided advice to a client in the context of their attorney-client relationship Plaintiff argues that the attorney-client relationship does not protect the Raie Defendants from liability in this case because the crime-fraud exception applies here.  The attorney-client "'privilege protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client.'"  *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014) (quoting *In re Grand Jury*, 705 F.3d 133, 151 (3d Cir. 2012)).  While communications between the client and their attorney "are often relevant and highly probative of the truth, they are protected in order 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  "'To circumvent [the attorney-client] privilege[ ] under the crime-fraud exception, the party seeking to overcome the privilege . . . must make a prima facie showing that (1) the client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud.'"  *Id.* (quoting *In re Grand*

10

*Jury*, 705 F.3d at 151).   Plaintiff asserts that, while the attorney-client privilege governs the confidentiality of communications between the client and their lawyer; it does not immunize attorneys from civil liability for their own tortious or criminal conduct.   Plaintiff relies on the Restatement (Third) of the Law Governing Lawyers, which states that "[i]n general, a lawyer is not liable for a client's tort unless the lawyer assisted the client through conduct itself tortious or gave substantial assistance to the client knowing the client's conduct to be tortious."   Restatement (Third) The Law Governing Lawyers § 56 cmt. c (Am. L. Inst. 2000) (citing Restatement Second, Torts § 876).[1]

The Complaint alleges that the Raie Defendants advised Aboujaoude to install recording devices throughout Plaintiff's home and that Aboujaoude followed this advice and intercepted Plaintiff's private conversations.   (Compl. ¶¶ 9-11, 13.) At this point in the litigation, where we must treat the allegations of the Complaint as true, *see Talley*, 116 F.4th at 206 (quotation omitted), we cannot conclude as a matter of law that the Raie Defendants are protected from liability in this case because their alleged advice to Aboujaoude to install recording devices throughout Plaintiff's home was advice given to a client.   We deny the Raie Defendants' Motion to Dismiss as to this argument.

> E.   Service of Process

Aboujaoude also argues that the Complaint should be dismissed as against him because he wasn't properly served with process in this case.   We previously granted Ajala leave to proceed *in forma pauperis* and directed the U.S. Marshals Service ("USMS") to effect service of process,

---

[1] While it does not appear that the Supreme Court of Pennsylvania has adopted this section of the Restatement, we note that this comment is based, in part, on the law of this Circuit.   (*See* Restatement (Third) The Law Governing Lawyers § 56 Reporter's Note to cmt. c (citing *Dutton v. Wolpoff & Abramson*, 5 F.3d 649 (3d Cir. 1993), *Kline v. First W. Gov't Secs.*, 24 F.3d 480 (3d Cir. 1994); *Heffernan v. Hunter, 189 F.3d 405* (3d Cir. 1999)).

using the USM-285 forms that Ajala completed.  (*See* Docket Nos. 5-9.)  USMS returned the USM-285 forms as executed, having served process at the address of the Raie law firm, which is the address that Plaintiff provided for all three Defendants.  (Docket No. 10.)  The Marshal's notes indicate that service was accepted at that address by the father of Defendant Raie.  (*See id.*) Aboujaoude argues that Ajala's use of the Raie Law Firm's address to serve him "makes no sense," because he "does not reside at a law firm," and Ajala "knows that [he] was either sleeping in his truck due to not having a place to sleep . . . , or stay[ing] at his girlfriend's home in Delaware until he recently obtained an apartment in Langhorne, PA."  (Aboujoade Mem. at 6 of 11.)

"A defendant may file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) when a plaintiff fails to properly serve him or her with the summons and complaint." *Gibbs v. Coupe*, 316 F.R.D. 84, 86 (D. Del. 2016) (citing Fed. R. Civ. P. 12(b)(5)).  "The fundamental purpose for requiring proper service of process is to ensure that the defendant receives notice of the commencement of the legal action and is afforded an opportunity to present his objections." *Perlberger v. Caplan & Luber, LLP*, 152 F. Supp. 2d 650, 653 (E.D. Pa. 2001) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)) (add'l citation omitted). Aboujaoude does not assert that he failed to receive the summons and Complaint and we note that he has filed a timely Motion to Dismiss.  Aboujaoude also does "not argue that the service employed by plaintiffs resulted in any material prejudice to [him]." *Id.* Accordingly, we find that he has not been materially prejudice because Plaintiff instructed the USMS to serve him through his attorney. *See id.* (finding that defendants were not materially prejudiced by the plaintiff's failure to personally serve defendants where the defendants "received a summons and a copy of the Complaint," filed a timely Motion to Dismiss," and did not argue that they had been materially prejudiced).  Moreover, given Aboujaoude's argument that he was "sleeping in his truck," it

appears that Plaintiff made a reasonable choice to request that USMS attempt service of process through the person she knew as his attorney.  *Cf.* Fed. R. Civ. P. 4(e)(2)(c) (providing that an individual may be served with process through an authorized agent).  We thus deny Aboujaoude's Motion to Dismiss with respect to his argument that we should dismiss the Complaint pursuant to Rule 12(b)(5) for insufficient service of process.  *See Perlberger*, 152 F. Supp. 2d at 653 (citing *Schmoltze v. County of Berks,* Civ. A. No. 99-1069, 2000 WL 62600, *2 (E.D. Pa. Jan 14, 2000)) (add'l citations omitted).

## IV.    CONCLUSION

For the foregoing reasons, we grant Defendant Raie's Motion to Dismiss as to Plaintiff's ECPA claim in Count I of the Complaint and we deny both Motions in all other respects.  The Defendants shall answer the Complaint within the time allotted by Federal Rule of Civil Procedure 12(a)(4)(A).  An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.

13